RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 10 / 23 / 13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

LEVI GREENUP,                          CIVIL ACTION
        Plaintiff                      SECTION "P"
                                       NO. 3:13-CV-00392

VERSUS

CHAD LEE, et al.,                      JUDGE ROBERT G. JAMES
        Defendants                     MAGISTRATE JUDGE JAMES D. KIRK


        REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

        Before the court is a civil rights complaint pursuant to 42

U.S.C. § 1983, in forma pauperis, by pro se plaintiff Levi Greenup

("Greenup") on February 21, 2013.  The named defendants are Chad

Lee (Warden of the Franklin Parish Detention Center ("FPDC") in

Winnsboro, Louisiana), the FPDC, Jerry Goodwin (warden of the David

Wade Correctional Center ("DWCC") in Homer, Louisiana), the DWCC,

the Louisiana Department of Corrections ("LaDOC"), and Gerald

McMurray, William Hunter Guimbellot ("Guimbellot"), and Arlandus

White ("White"), all corrections officers at the Franklin Parish

Detention Center.[1]

────────────────────

        [1] In his complaint, Greenup incorrectly named Deputy
Guimbellot as "Sergeant Gimelot" and Deputy White as "Sergeant
White" (Doc. 18).
        Although Greenup appeared to list the FPDC, the DWCC and the
La. Department of Corrections as defendants in his complaint,
they were never served.  Greenup never completed summonses for
these defendants and no attempt was ever made to effect service.
Accordingly, it will be recommended that the complaint against
these defendants be dismissed without prejudice under
Fed.R.Civ.P. 4(m).  See McGinnis v. Shalala, 2 F.3d 548, 550 (5th
Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293 (1994);

Greenup alleges in his complaint (Doc. 1) that, while he was confined in the FPDC in February 2012, he was attacked by several inmates and severely injured.  Greenup contends he was previously attacked and injured by an inmate on June 21, 2010, the guards did not see that incident occur, and Warden Lee did not do anything about it; Greenup contends he suffered a severe laceration to the back of his head which required five staples (Doc. 1).  Greenup further contends that, subsequently, he was attacked my multiple inmates, resulting in a fractured ulna; again, the guards did not see the attack (Doc. 1).  After the second incident, but before February 23, 2012, Greenup was again attacked and suffered a busted lip, a broken jaw, and a black eye (Doc. 1).  In the fourth incident, on February 23, 2012, Greenup was again attacked by multiple inmates and the guards again did not see the incident; Greenup suffered a fractured skull, brain trauma (bleeding and swelling), and severe memory loss, discovered that his jaw was

---

Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).
    It is further noted that the FPDC and the DWCC are buildings, and not legal entities.  See Roy v. Orleans Parish Sheriff's Office, 2009 wl 4730697 (E.D.La. 2009), citing Jones v. St. Tammany Parish Jail, 4 F.Supp. 2d 616, 613 (E.D.La. 1998).  A prison or jail or its administrative departments are not legal entities capable of being sued under Section 1983 because they are not juridical entities under Louisiana state law capable of being sued and because they are not "persons" for purposes of suit under Section 1983.  Fair v. Crochet, 2010 WL 430806, *12 (E.D.La. 2010).  Also, Guidry v. Jefferson Cty. Detention Center, 868 F.Supp. 189, 191 (E.D.Tex. 1994).

(already) broken, and spent twelve days in the hospital, eight of them in ICU.

Greenup contends the prison staff at FPDC is aware of and encourages territorial battles in the FPDC, where inmates from outside of Winnsboro are attacked by inmates from Winnsboro (Doc. 1). Greenup contends that Warden Lee was aware of the risk and refused to take measures to ensure Greenup's safety (Doc. 1). Greenup further contends that the prison officials at both the FPDC and the DWCC refused to process his Administrative Remedy Procedure grievances, that the inmate counsel provided him at the DWCC refuses to work on a grievance or complaint against the FPDC or the DWCC, he is not allowed access to his legal materials while he is in extended lockdown in the DWCC, and he is not allowed to make copies of his legal documents at DWCC (Doc. 1).

Greenup contends that, as a result of the attacks, he continues to suffer migraines, blurry vision, nausea, dizziness, loss of balance, loss of taste and appetite, depression, nightmares, fear and anxiety. For relief, Greenup asks for monetary damages, including punitive, injunctive relief, attorney fees, a transfer to the Elayn Hunt Correctional Center because it has more medical staff, and a trial by jury.

Defendants Lee, White, McMurray, and Gimbellot filed a motion for summary judgment (Docs. 18, 19, 27, 32, 39). Defendant Goodwin also filed a motion for summary judgment (Doc. 23, 24). Greenup

responded to the defendants' motions (Docs. 26, 35, 41).

Defendants' motions are now before the court for disposition.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  However, the mere existence of a scintilla of evidence in
support of the plaintiff's position will be insufficient to
preclude summary judgment; there must be evidence on which the jury
could reasonably find for the plaintiff.  Stewart v. Murphy, 174
F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999),
and cases cited therein.

If the movant produces evidence tending to show that there is
no genuine issue of material fact, the nonmovant must then direct
the court's attention to evidence in the record sufficient to
establish the existence of a genuine issue of material fact for
trial.  In this analysis, we review the facts and draw all
inferences most favorable to the nonmovant.  Herrera v. Millsap,
862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory
allegations are not competent summary judgment evidence, and such
allegations are insufficient, therefore, to defeat a motion for
summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Exhaustion

Defendants argue in both motions for summary judgment that
Greenup failed to exhaust his administrative remedies[2]  (Docs. 18,

---

[2] Greenup contends in his brief (Doc. 36) that a motion for
summary judgment is not the proper procedural vehicle to assert
the affirmative defense of lack of exhaustion.  Greenup makes no
argument to support that claim and the undersigned finds no
support for it in the law.  See Dillon v. Rogers, 596 F.3d 260
(5th Cir. 2010).

23).

Greenup contends he filed several ARPs, including an appeal to the Louisiana Department of Corrections, all of which the prison officials "lost." Greenup attached copies of the ARPs which he alleges he attempted to file. Greenup further alleges the inmate paralegal at DWCC refused to assist him. Defendants contend that, even if the purported grievances attached to Greenup's complaint had been filed, the earliest date is after the 45-day period (from February 23, 2012) for filing a grievance had passed.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). Jones v. Bock, 549 U.S. 199, 211, 237 S.Ct. 910, 918-919 (2007). Exhaustion is mandatory, irrespective of the forms of relief sought and offered through administrative remedies. Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001). The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002). Resort to a prison grievance process must precede resort to a court. Porter, 534 U.S. at 529, 122 S.Ct. at 990. However, the exhaustion requirement

imposed by amended § 1997e is not jurisdictional.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 101, 126 S.Ct. 2378, 2392 (2006).

The exhaustion requirement may be subject, in rare instances, to certain defenses such as waiver, estoppel, or equitable tolling. <u>Days v. Johnson</u>, 322 F.3d 863, 866 (5th Cir. 2003).   Exhaustion requirements may be excused where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion requirement.   A district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement.  <u>Johnson v. Ford</u>, 261 Fed.Appx. 752, 755 (5th Cir. 2008), and cases cited therein.  The Fifth Circuit has recognized a narrow situation in which administrative remedies become unavailable to a prisoner due to a physical injury.  The court held that administrative remedies are deemed unavailable when: (1) an inmate's untimely filing of a grievance is due to a physical injury; and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance.  <u>Days v. Johnson</u>, 322 F.3d 863, 868 (5th Cir. 2003), implicitly overruled on other grounds by <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 166 (2007)(where prisoner's broken hand prevented him from filling out and filing a timely grievance, failure to meet exhaustion requirement was excused).

Failure to exhaust is an affirmative defense under the Prison

Litigation Reform Act, and inmates are not required to specially plead or demonstrate exhaustion in their complaints.  <u>Jones v. Bock</u>, 549 U.S. 199, 216, 127 S.Ct. 910, 921 (2007); <u>Torns v. Mississippi Dept. of Corrections</u>, 301 Fed.Appx. 386, 388 (5th Cir. 2008); <u>Carbe v. Lappin</u>, 492 F.3d 325, 327-328 (5th Cir. 2007). Where the complaint does not clearly show that the inmate failed to exhaust administrative remedies, it is defendants' job to raise and prove such an affirmative defense.  <u>Torns</u>, 301 Fed.Appx. at 389; <u>Carbe</u>, 492 F.3d at 328.

Greenup contends he was attacked and beaten on February 23, 2012, then hospitalized for twelve days, eight of which were spent in the intensive care unit (Doc. 1).  Greenup contends he suffered a fractured skull, brain trauma (bleeding and swelling), and severe memory loss.  Greenup was apparently released from the hospital on March 8, 2012, was transferred to the Elayn Hunt Correctional Center, then was transferred to the DWCC on April 16, 2012 (Docs. 1, 24).

Greenup was released from the hospital on March 8, 2012. Assuming Greenup was physically able to file a grievance on March 8, 2012, he had forty-five days under the grievance procedures in effect at the FPDC, or until April 22, 2012, to do so.  Therefore, Greenup's first step ARP, dated April 5, 2012 (Doc. 41), would have been filed timely.

The defendants have not provided copies of Greenup's medical

records to show when Greenup recovered sufficiently from his severe injuries to actually be able to file grievances, and the undersigned does not assume he was able to do so immediately after he was released from the hospital, particularly since Greenup alleges that most of his stay in the hospital was spent in ICU. Greenup also contends the inmate paralegal at DWCC refused to help him fill out grievance forms against prison officials at either the FPDC or DWCC.   Therefore, Greenup's physical incapacity and, perhaps, mental incapacity from memory loss, tolled his time limit for filing a grievance.

The FPDC defendants contend, however, in their brief and the affidavit of Warden Lee that they would not have responded to a grievance filed after 45 days from the February 23, 2012 incident, or after April 8, 2012 (Doc. 18).

Since Greenup was physically and perhaps mentally incapacitated for an undetermined length of time, but at least until he was released from the hospital on March 8, 2012, and the FPDC defendants admit they would have responded to any grievances filed by Greenup after April 8, 2012, it appears that administrative remedies were unavailable to Greenup at the FPDC.

In any event, Greenup contends he sent five grievances: (1) the first is dated April 5, 2012 and Greenup contends he mailed it from the Elayn Hunt Correctional Center on April 5, 2012 (Doc. 41), (2) the second is dated May 12, 2012 and Greenup contends he mailed

9

it to the FPDC from the DWCC on May 17, 2012 (Doc. 41), (3) the third is dated August 1, 2012 and Greenup contends he submitted it to both the FPDC and the DWCC (Doc. 41), (4) the fourth was a second step grievance dated October 10, 2012 which was sent to the Louisiana Department of Corrections in an attempt to fully exhaust his administrative remedies as to his claims and also alleged he had not received a response to his first step grievance from the FPDC, and (5) the fifth was dated November 23, 2012 and sent to the FPDC (Doc. 41). On August 7, 2012, DWCC prison officials responded to Greenup's third grievance, dated August 1, 2012, which to prison officials in the DWCC, advising him that he must send his grievances directly to the FPDC (Doc. 41). Greenup also filed an "inmate funds withdrawal request" at the DWCC dated November 26, 2012 (Doc. 41), which shows he needed money to send a "legal letter" to Warden Chad Lee and further shows the letter was mailed on November 29, 2012 (Doc. 41). That inmate funds withdrawal request was signed by an officer at DWCC (Tr. p. 41).

Greenup contends he has technically exhausted his administrative remedies because he filed grievances at both steps of the administrative remedy process, regardless of whether the grievances were responded to.

The FPDC defendants argue that the copies of Greenup's

10

grievances are not verified[3] and that his grievances were never received at the FPDC.  Defendants show in an affidavit by Warden Lee (Doc. 18) and their statement of undisputed facts (Doc. 32) that Greenup never filed a grievance with the FPDC.  Defendants also show, through an affidavit by Rhonda Weldon, a paralegal for the Louisiana Department of Corrections, that Greenup did not file a second-step grievance with the Louisiana Department of Corrections (Doc. 32).  However, the defendants show that Greenup sent Warden Lee a "letter" dated June 7, 2012, in which Greenup stated he was going to sue the FPDC due to the attacks on him, he was waiting for a response to his grievance, and offered to waive the law suit in return for Warden Lee dropping contraband charges pending against Greenup (Doc. 18).  The FPDC defendants contend they did not treat the letter as a grievance, but even if they had it was untimely.

Greenup has shown that the DWCC received and responded to one of the grievances which he contends he also sent to the FPDC, and that he submitted a written and authorized "inmate funds withdrawal request," which shows funds were withdrawn for the purpose of mailing a "legal letter" to Warden Lee at the FPDC and that the "letter" was, in fact, mailed to Warden Lee in November 2012 (Doc. 41).  However, the FPDC defendants contend that grievance was not

---

[3] In this instance, Greenup's original complaint acts as a declaration in support of the authenticity of his exhibits.

received.

Regardless of whether Greenup's grievances were ever seen or received by the FPDC defendants, Greenup contends and has adduced some evidence[4] to show that he in fact attempted to file grievances with both the FPDC and the La. DOC, despite whatever physical and/or mental impairments he still had, and despite the alleged lack of legal assistance and legal materials at the DWCC.

Defendants quote the procedures and time limits in effect in the Louisiana Administrative Remedy Procedure, La. Admin. Code, Title 22, Part 1, § 325(F)(1)(a), and contend that Greenup's grievances were all untimely and that he did not file a second-step grievance with the Louisiana DOC. However, Warden Lee states in his affidavit that he implemented his own grievance procedures at the FPDC, a copy of which is attached (Doc. 18, Ex. A). According to the FPDC procedures, inmates only have 45 days from the date of an incident in which to file a grievance, whereas the Louisiana ARP allows ninety days. Warden Lee also states in his affidavit that an investigator issues written findings and recommendations "within a reasonable time," the warden hears the inmate's first appeal from

---

[4] Although Greenup has proven the authenticity of his documentary evidence and has not submitted proof that he mailed his grievances, it is clear that at least one was authentic and was sent because it was received by the DWCC, and Greenup proved that he mailed a grievance to the Louisiana Department of Corrections. These facts lend credence to Greenup's assertions that he wrote the other grievances and placed them in the hands of prison officials at the Elayn Hunt Correctional Center and the DWCC for mailing.

the FPDC investigator's findings (if the warden was not involved in the investigation) and issues a ruling "within a reasonable amount of time," and inmates "may" thereafter file an appeal with the La. DOC "within a reasonable amount of time" (Doc. 18).

According to Warden Lee's affidavit and the rules in effect at the FPDC (Doc. 18, Ex. A), there are no time limits (other than "reasonable") for issuance of the FPDC investigator's findings, for issuance of the warden's own ruling on the appeal of the FPDC investigator's findings, or for filing an appeal with the La. DOC; the FPDC rules also do not state that an inmate must (or may) file an appeal with the FPDC warden or with the La. DOC. Therefore, pursuant to the grievance procedures in effect at the FPDC, there was no requirement that Greenup file an appeal with the La. Department of Corrections and, even if there was, there was no time limit for doing so.

Accordingly, the FPDC defendants' complaints that Greenup failed to follow the La. ARP procedures and time limits are meritless, since the grievance procedures at the FPDC do not follow the La. Administrative Remedy Procedures and do not require an appeal to the La. DOC.

Therefore, Greenup technically exhausted the administrative remedies in effect at the FPDC for his claims against the FPDC defendants. Warden Lee's, Captain McMurray's, Deputy Guimbellot's and Deputy White's motion for summary judgment (Doc. 18) should be

13

denied.

However, Greenup has not made any showing that he filed any grievances with the DWCC concerning his complaint about the lack of legal assistance and legal materials.  The only grievance filed with the DWCC concerned his complaints against the FPDC defendants, to which the DWCC responded that he needed to file that grievance at the FPDC.  Since Greenup has not shown that he exhausted, or made any attempt to exhaust, administrative remedies with the DWCC concerning his complaints about the DWCC, Warden Goodwin's motion for summary judgment (Doc. 23) should be granted.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Warden Lee's, Captain McMurray's, Deputy Guimbellot's and Deputy White's motion for summary judgment (Doc. 18) should be DENIED.

IT IS FURTHER RECOMMENDED that Warden Goodwin's motion for summary judgment be GRANTED (Doc. 23) and that Greenup's claims against Warden Goodwin be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

14

Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 23rd day of December 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE