RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  3/31/14
       JDK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LEVI GREENUP, <br>     Plaintiff <br><br> VERSUS <br><br> CHAD LEE, et al., <br>     Defendants | CIVIL ACTION <br> SECTION "P" <br> NO. 3:13-CV-00392 <br><br><br> JUDGE ROBERT G. JAMES <br> MAGISTRATE JUDGE JAMES D. KIRK |

SUPPLEMENTAL REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Levi Greenup ("Greenup") on February 21, 2013. The defendants are Chad Lee (Warden of the Franklin Parish Detention Center ("FPDC") in Winnsboro, Louisiana), Jerry Goodwin (warden of the David Wade Correctional Center ("DWCC") in Homer, Louisiana), and Gerald McMurray, William Hunter Guimbellot ("Guimbellot"), and Arlandus White ("White"), all corrections officers at the Franklin Parish Detention Center.[1]

Greenup alleges in his complaint (Doc. 1) that, while he was confined in the FPDC in February 2012, he was attacked by several inmates and severely injured. Greenup contends he was previously attacked and injured by an inmate on June 21, 2010, the guards did not see that incident occur, and Warden Lee did not do anything

---

[1] In his complaint, Greenup incorrectly named Deputy Guimbellot as "Sergeant Gimelot" and Deputy White as "Sergeant White" (Doc. 18).

about it; Greenup contends he suffered a severe laceration to the back of his head which required five staples (Doc. 1). Greenup further contends that, subsequently, he was attacked my multiple inmates, resulting in a fractured ulna; again, the guards did not see the attack (Doc. 1). After the second incident, but before February 23, 2012, Greenup was again attacked and suffered a busted lip, a broken jaw, and a black eye (Doc. 1). In the fourth incident, on February 23, 2012, Greenup was again attacked by multiple inmates and the guards again did not see the incident; Greenup suffered a fractured skull, brain trauma (bleeding and swelling), and severe memory loss, discovered that his jaw was (already) broken, and spent twelve days in the hospital, eight of them in ICU.

Greenup contends the prison staff at FPDC is aware of and encourages territorial battles in the FPDC, where inmates from outside of Winnsboro are attacked by inmates from Winnsboro (Doc. 1). Greenup contends that Warden Lee was aware of the risk and refused to take measures to ensure Greenup's safety (Doc. 1). Greenup further contends that the prison officials at both the FPDC and the DWCC refused to process his Administrative Remedy Procedure grievances, that the inmate counsel provided him at the DWCC refuses to work on a grievance or complaint against the FPDC or the DWCC, he is not allowed access to his legal materials while he is in extended lockdown in the DWCC, and he is not allowed to make

copies of his legal documents at DWCC (Doc. 1).

Greenup contends that, as a result of the attacks, he continues to suffer migraines, blurry vision, nausea, dizziness, loss of balance, loss of taste and appetite, depression, nightmares, fear and anxiety. For relief, Greenup asks for monetary damages, including punitive, injunctive relief, attorney fees, a transfer to the Elayn Hunt Correctional Center because it has more medical staff, and a trial by jury.

Defendants Lee, White, McMurray, and Guimbellot (the "FPDC defendants") filed a motion for summary judgment (Docs. 18, 19, 27, 32, 39). Defendant Goodwin also filed a motion for summary judgment (Doc. 23, 24). Greenup responded to the defendants' motions (Docs. 26, 35, 41). The undersigned recommended that Goodwin's motion for summary judgment (Doc. 23) be granted and that the motion filed by the FPDC defendants (Doc. 18) be denied.

The FPDC defendants objected to the report and recommendation, contending that Greenup failed to exhaust his administrative remedies. The district judge remanded the case to the undersigned for an evidentiary hearing on that issue. See <u>Dillon v. Rogers</u>, 596 F.3d 260, 273 (5th Cir. 2010)(If the plaintiff survives summary judgment on exhaustion, i.e. if there is a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies, the judge may hold an evidentiary hearing to resolve disputed facts concerning exhaustion before the case proceeds to

the merits).

It is again recommended that the FPDC defendants' motion for summary judgment on the issue of exhaustion (Doc. 18) be denied.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Exhaustion

Defendants objected to the original Report and Recommendation which recommended denial of their motion for summary judgment on the ground of lack of exhaustion of administrative remedies. The District Judge remanded the matter to the undersigned for an evidentiary hearing and supplemental Report and Recommendation.

After listening to the evidence at the hearing and assuming, for the sake of argument, that a 45 day time limit for filing a grievance applied in this case, I find that Greenup's allegations as to his attempts to exhaust his administrative remedies are credible and supported by the documentary evidence, and that Greenup's claims are technically exhausted, and recommend that defendants' motion for summary judgment be denied.

Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010), citing Carty v. Thaler, 583 F.3d 244, 252 (5th Cir. 2009), cert. den., 559 U.S. 1106, 130 S.Ct. 2402 (2010). Similarly, while it is a question of law whether administrative remedies qualify as being "available" under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact. Dillon, 596 F.3d at 266, citing Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir. 1999).

Since exhaustion is an affirmative defense, the burden is on the defendants to demonstrate that Greenup failed to exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910 (2007). Defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor. Dillon, 596 F.3d at 266, citing Martin v. Alamo Cmty. Coll. Dist., 353 F.3d 409, 412 (5th Cir. 2003).

1. Time Line of Events

The following time line is derived from the pleadings and summary judgment evidence (including the February 25, 2014 hearing) in this case:

| | |
|---|---|
| May 20, 2010 | Greenup entered the Franklin Parish Detention Center ("FPDC") |
| June 21, 2010 | 1st inmate assault on Greenup |
| July 7, 2011 | 2nd inmate assault on Greenup |
| Early February 2012 | 3rd inmate assault on Greenup |
| February 23, 2012 | 4th inmate assault on Greenup; Greenup hospitalized (8 days in ICU) |
| March 8, 2012 | Greenup released from the hospital and returned to the FPDC |
| April 2, 2012 | Greenup was transferred to the Elayn Hunt Correctional Center ("EHCC") |
| April 5, 2012 | Greenup's first Step 1 grievance was signed and mailed to the FPDC (from the EHCC) on April 5, 2012 |
| April 16, 2012 | Greenup was transferred to the David Wade Correctional Center ("DWCC") |
| May 12, 2012 | date on Greenup's second Step 1 grievance; it was mailed to the FPDC, from the DWCC, on May 17, 2012 |
| June 7, 2012 | date of Greenup's letter to Warden Lee at the FPDC, stating he had not received a response to his grievance (letter received but not responded to by Warden Lee) |
| August 1, 2012 | date of Greenup's third Step 1 grievance, which was sent to both the FPDC and the DWCC (from the DWCC) |

| | |
|---|---|
| August 7, 2012 | DWCC officials responded to Greenup's third Step 1 grievance, telling Greenup he has to send his grievance directly to the FPDC |
| October 10, 2012 | date of Greenup's Step 2 grievance, which was sent to the La. Department of Corrections ("LaDOC") from the DWCC |
| November 23, 2012 | date of Greenup's fourth Step 1 grievance, which was sent to the FPDC from the DWCC |
| November 26, 2012 | date on Greenup's inmate funds withdrawal request at the DWCC to send "legal mail" to Warden Lee at the FPDC (signed by a DWCC official) |
| November 29, 2012 | date Greenup's legal mail was mailed to Warden Lee at the FPDC from the DWCC |
| February 21, 2013 | Greenup filed this lawsuit |

2. Grievance Procedures at the FPDC

First, Greenup contends he was unaware of any grievance procedures at the FPDC because he was never given a copy of the rules and regulations, and they were not posted. Greenup testified at the hearing that, while he was at the FPDC, he was led to believe (but does not state by whom) that grievances had to be filed with the LaDOC, and that he had sent grievances concerning the FPDC directly to the LaDOC.

Warden Lee, warden of the FPDC, testified at the February 25, 2014 hearing that the sheriff adopted his own grievance procedures, pursuant to La.R.S. 15:1171, and that every inmate is given a written copy of the rules and regulations upon admission to the

8

FPDC.

Under Louisiana law, the Department of Public Safety and Corrections and each sheriff is authorized to adopt an administrative remedy procedure at each of their institutions. La. R.S. 15:1171. The administrative remedy procedure is intended to resolve complaints and grievances that arise while the offender is in the custody of, or under the supervision of the department or sheriff. La. R.S. 15:1171. The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or other relief stemming inter alia from conditions of confinement, personal injuries, and medical malpractice. La. R.S. 15:1171. The administrative procedures, when promulgated, provide the offender's exclusive remedy—to the extent that federal law permits. La. R.S. 15:1171.

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. Garner Aguirre v. Dyer, 233 Fed. Appx. 365 (5th Cir. 2007); Simkins v. Bridges, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009); Plaisance v. Cain, 374 Fed. Appx. 560, 561 (5th Cir. 2010). Nonetheless, inmates should have avenues for discovering the procedural rules governing their grievances. Dillon, 596 F.3d at 268. When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. Dillon, 596 F.3d

at 268.

According to Warden Lee's testimony, Greenup was provided with a copy of the rules, apparently in lieu of an oral explanation. Greenup contends he was not given a copy of the rules and was never told of a grievance procedure at the FPDC. There was no testimony or other evidence to show that the grievance procedures were available in the jail where inmates had access to them.

Warden Lee also testified that inmates must file a second step grievance with the Louisiana Department of Corrections, but did not provide a written rule on that. The written FPDC rule for grievances, which is purportedly given to the inmates, states:

> "32. Inmates have the right to file a grievance. Grievances may be requested from a supervisor. They must be filed within 45 days from the date of the incident."

Therefore, the written rules for inmates, which Warden Lee testified were given to Greenup, did not inform Greenup that he must file a second step grievance.

The FPDC rule also departs from the standard rule prevailing in all Louisiana Department of Corrections facilities in that it allows inmates only 45 days in which to file a grievance, whereas inmates housed in Louisiana Department of Corrections facilities have 90 days in which to file a grievance.[2] The problem in this

---

[2] The undersigned did not find any case law regarding an appropriate minimum time in which to file a grievance. Since sheriffs are given no restrictions or guidelines in the grievance procedures they may adopt, there is actually nothing to stop them from enforcing even a one day time limit. However, at some

case is that, as defendants concede, Greenup was a DOC inmate housed in the FPDC. Defendants appear to argue that, because the incident occurred at the FPDC, the 45 day time limit for filing a grievance applies.[3] However, Greenup was transferred to a DOC facility (EHCC, then DWCC) soon after he was released from the hospital, where the 90 day time limit was applicable. At the time he was transferred to EHCC, neither the 45 day nor the 90 day time limit were up.

For the sake of argument, the undersigned assumes, but does not decide, that the 45 day time limit is applicable in this case.

In arguing that Greenup failed to exhaust his administrative remedies, defendants rely on the facts that Greenup did not file his grievance within the 45 day time period provided in the FPDC grievance procedures, and that he did not file a second step grievance with the Louisiana Department of Corrections. Defendants contend Greenup had through April 10, 2012 to file his First Step

---

point, the time limit may become so short that it renders administrative remedies unavailable. It is not necessary, in this case, to determine whether the 45 day time limit in effect at the FPDC is too short. However, it is foreseeable that, in some cases, it may be so short as to render administrative remedies "unavailable."

[3] Defendants also argue, contradictorily, that Greenup must file a Step 2 grievance because he is a Department of Corrections inmate. Although Warden Lee testified that the FPDC requires a Step 2 grievance, that was not shown in the written rules filed into evidence at the hearing. In any event, Greenup alleges he did attempt to file Step 2 grievance with the DOC; both parties filed a copy of that grievance into the record.

grievance.

After Greenup was beaten on February 23, 2013, he was immediately transported to the hospital, where he remained for about twelve days. Greenup testified at the hearing that, when he was returned to the FPDC, he was given hydrocodone several times a day and was "fuzzy" while he was taking it; Greenup had his last dose of hydrocodone on March 16, 2012.

Greenup was transferred to EHCC on April 2, 2012, and to DWCC on April 16, 2012. Greenup filed his first Step 1 grievance on April 5, 2012 and his second Step 1 grievance on May 12, 2012. Greenup testified that another inmate assisted him with writing first grievance, dated April 5, 2012, because he was still dizzy and still having trouble reading and writing.

The exhaustion requirement may be subject to certain defenses such as waiver, estoppel, or equitable tolling. Johnson v. Ford, 261 Fed.Appx. 752, 755 (5th Cir. 2008), citing Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003). A district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement. Johnson, 261 Fed.Appx. at 755, citing Miller v. Stanmore, 636 F.2d 986, 991 (5th Cir. 1981). The Fifth Circuit has recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an

administrative remedy. Johnson, 261 Fed.Appx. at 755, citing Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982). Further, exhaustion requirements may be excused where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion requirement. Johnson, 261 Fed.Appx. at 755, citing Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), cert. den., 526 U.S. 1133, 119 S.Ct. 1809 (1999).

It is clear that Greenup was unable to file a grievance through at least March 16, 2012, due to hospitalization followed by taking hydrocodone four times per day. Therefore, Greenup had at least through May 1, 2012 (45 days after March 16, 2012) to file an ARP. Therefore, Greenup's first Step 1 ARP, dated April 5, 2012, was timely as to the February 23, 2012 assault and for his broken jaw, which was apparently sustained in the early February assault but not discovered until February 23, 2012.[4]

Moreover, even assuming for the sake of argument that Greenup had 45 days from February 23, 2012, or through April 10, 2012 to file a grievance, Greenup's first grievance, dated and mailed on

---

[4] Arguably, since Greenup was transferred to EHCC on April 2, 2012, and to DWCC on April 16, 2012, and both of those facilities are Department of Corrections facilities, which utilize the Louisiana Administrative Remedy Procedures set forth in LAC 22:I.325, Greenup had ninety days, or through June 16, 2012, to file his First Step grievance. Greenup alleges he attempted to file at least his first two First Step grievances prior to May 20, 2012.

April 5, 2012, *was still timely*.

Therefore, Greenup's first Step 1 grievance was timely. However, the prison officials at the FPDC contend they did not receive that or any other grievance from Greenup.

Warden Lee admits he received a letter from Greenup dated June 7, 2012, in which Greenup stated he was waiting for a response to his grievances. Warden Lee testified at the hearing that he saw Greenup's reference to a grievance but did not respond to Greenup's letter.

Defendants argue that Greenup wrote and back-dated his grievances after they filed their motion for summary judgment. However, the fact that Greenup referred to his grievances in his June 7, 2012 letter to Warden Lee indicates he did not write his grievances after he filed this action, and lends great weight to the credibility of Greenup's allegation that he attempted to send the grievances dated April 5 and May 12, 2012 to the FPDC. Greenup cannot be held at fault for the any deficiencies in the U.S. Postal Service, or in the mail rooms at the FPDC, the EHCC, or the DWCC. Greenup did all he was required to do to file his grievance. Since Greenup's allegations as to his attempts to exhaust his administrative remedies are supported by other evidence in the record, the undersigned finds Greenup's allegations credible and accepts them as true.

Accepting as true Greenup's contention and evidence that he

sent at least one timely grievance to the FPDC, the undersigned concludes that Greenup exhausted his Step 1 remedy with the FPDC.[5]

Defendants also argue that Greenup failed to file a Step 2 grievance with the Louisiana Department of Corrections. However, Greenup contends he attempted to file a second step grievance with the Louisiana Department of Corrections, and provided a copy of that grievance dated October 10, 2012. The FPDC written rules and regulations for inmates do not notify inmates that they are required to file a second step grievance and there is only Warden Lee's self-serving testimony that a second step grievance is required. Defendants have not shown how Greenup was supposed to have known there was a Step 2 requirement in the FPDC grievance procedures. Therefore, Greenup complied with the grievance procedures provided to the inmates and defendants are estopped from relying on the fact that Greenup did not comply with a procedure that was not set forth in the inmates rules and regulations.

---

[5] It is noted that that, pursuant to L.A.C. 22:I.325(F)(3)(a)(xi), "When an offender has filed a request at one institution and is transferred prior to the review, or if he files a request after transfer on an action taken by the sending institution, the sending institution shall complete the processing through the first step response. The warden of the receiving institution shall assist in communication with the offender."
  The extent of the duty of the prison officials at the DWCC to assist Greenup with filing his grievance at the FPDC is not specified, but may encompass more than telling him he has to file his grievance directly with the FPDC, as they did in response to the third 1st Step grievance Greenup filed with both the FPDC and the DWCC.

In any event, the undersigned finds Greenup's assertion that he attempted to file a grievance with the Louisiana Department of Corrections to be credible and that his attempt was adequate to exhaust the second step of the grievance process.

Therefore, defendants have failed to carry their burden of proving that Greenup failed to at least exhaust his administrative remedies in a timely manner pursuant to the administrative remedies procedures in effect at the FPDC as set forth in the FPDC inmate rules and regulations.

Since there are no genuine issues of material fact as to the fact that Greenup exhausted his administrative remedies, defendants' motion for summary judgment (Doc. 18) should be denied on the issue of exhaustion.

3.

Defendants also argue that Greenup failed to file a grievance against each of the FPDC defendants. However, exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance that was filed. The lower court must determine the sufficiency of the exhaustion in such cases. <u>Jones v. Bock</u>, 549 U.S. 199, 219, 127 S.Ct. 910, 923 (2007).

Under Louisiana law, a grievance is defined as "a written complaint by an offender on the offender's own behalf regarding a policy applicable within an institution, a condition within an institution, an action involving an offender of an institution or

an incident occurring within an institution." 22 La. A.D.C. Pt. 1, § 325(E). Since Greenup complains that defendants failed to provide him with a safe environment, his grievance must necessarily have alleged facts describing the threat to his safety.

Greenup's April 5, 2012, May 12, 2012, August 1, 2012, and October 16, 2012 grievances describe the inmate attacks he suffered at the FPDC and state that he asked Warden Lee to transfer him to a safer facility after the first two attacks because he believed his life was in danger, but he was denied a transfer several times (Doc. 41, Exs.). Greenup contends in his grievances that the February 23, 2012 attack would never have occurred if Warden Lee had paid attention to Greenup's safety concerns (Doc. 41, Exs.). Greenup's November 2012 grievance concerns the defendants' failure to respond to his grievances (Doc. 41, Exs.).

In dealing with defendants' exhaustion defense, the court is only concerned with the adequacy of Greenup's grievance to apprise the prison officials at FPDC of the facts of the attacks and his safety concerns. The purpose of a grievance is to enable an offender to seek formal review of a complaint relating to most aspects of his incarceration, 22 La. A.D.C. Pt. 1, § 325(C), not to put specific prison officials on notice that they may be sued in the future. See <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004)("the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a

17

particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation").

In his complaint, Greenup alleges that the defendant FPDC prison officials were aware of the pattern of attacks, encouraged the attacks, and failed to take any steps to protect Greenup, resulting in the severe injuries he suffered in the February 23, 2012 attack. Three of the grievances Greenup sent to the FPDC detailed the assaults and his injuries, and complained that nothing was done to ensure his safety at FPDC. Therefore, three of Greenup's grievances, including the one filed on April 5, 2012, were adequate to apprise the FPDC prison officials of his failure-to-protect claims.

Since Greenup's grievances adequately alerted the FPDC prison officials as to the nature of the issues alleged in Greenup's complaint, defendants' argument, that Greenup's complaint should be dismissed because he failed to include all named defendants in his grievances, is meritless.

Since there are no genuine issues of material fact as to the fact that Greenup's grievances were adequate to apprise defendants of the nature of his claims, defendants' motion for summary judgment should be denied.

## Conclusion

Based on the foregoing discussion, IT IS AGAIN RECOMMENDED that the motion for summary judgment filed by Lee, Guimbellot,

McMurray and White (Doc. 18) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3/1st day of March 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE