RECEIVED

NOV 2 4 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT                    b
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

LEVI GREENUP,                      CIVIL ACTION
      Plaintiff                    SECTION "P"
                                   NO. 3:13-CV-00392
VERSUS

CHAD LEE, et al.,                  JUDGE ROBERT G. JAMES
      Defendants                   MAGISTRATE JUDGE JAMES D. KIRK

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Before the court is a civil rights complaint pursuant to 42

U.S.C. § 1983, in forma pauperis, by pro se plaintiff Levi Greenup

("Greenup") on February 21, 2013.  The named defendants are Chad

Lee (Warden of the Franklin Parish Detention Center ("FPDC") in

Winnsboro, Louisiana), the FPDC, Jerry Goodwin (warden of the David

Wade Correctional Center ("DWCC") in Homer, Louisiana), the DWCC,

the Louisiana Department of Corrections ("LaDOC"), and Gerald

McMurray, William Hunter Guimbellot ("Guimbellot"), and Arlandus

White ("White"), all corrections officers at the Franklin Parish

Detention Center.[1]

---

[1] In his complaint, Greenup incorrectly named Deputy
Guimbellot as "Sergeant Gimelot" and Deputy White as "Sergeant
White" (Doc. 18).
      Although Greenup appeared to list the FPDC, the DWCC and the
La. Department of Corrections as defendants in his complaint,
they were never served.  Greenup never completed summonses for
these defendants and no attempt was ever made to effect service.
Accordingly, it will be recommended that the complaint against
these defendants be dismissed without prejudice under
Fed.R.Civ.P. 4(m).  See <u>McGinnis v. Shalala</u>, 2 F.3d 548, 550 (5th
Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293 (1994);
<u>Systems Signs Supplies v. U.S. Dept. of Justice</u>, 903 F.2d 1011,
1013 (5th Cir. 1990); <u>Kersh v. Derosier</u>, 851 F.2d 1509, 1512 (5th
Cir. 1988).
      It is further noted that the FPDC and the DWCC are

Greenup alleges in his complaint (Doc. 1) that, while he was confined in the FPDC in February 2012, he was attacked by several inmates and severely injured.  Greenup contends he was previously attacked and injured by an inmate on June 21, 2010, the guards did not see that incident occur, and Warden Lee did not do anything about it; Greenup contends he suffered a severe laceration to the back of his head which required five staples (Doc. 1; Doc. 76, pp. 12-17/58).  Greenup further contends that, in a subsequent, second incident on July 7, 2011, he was attacked my multiple inmates, resulting in a fractured ulna; again, the guards did not see the attack (Doc. 1; Doc. 76, p. 24/58).  After the second incident, but before February 23, 2012, Greenup was attacked by other inmates a third time and suffered a busted lip, a broken jaw, and a black eye (Doc. 1); there do not appear to be any medical records relating to this incident.  In the fourth incident, on February 23, 2012, Greenup was attacked by multiple inmates and the guards again did not see the incident; Greenup suffered a fractured skull, brain trauma (bleeding and swelling), and severe memory loss, discovered

---

buildings, and not legal entities.  See Roy v. Orleans Parish Sheriff's Office, 2009 wl 4730697 (E.D.La. 2009), citing Jones v. St. Tammany Parish Jail, 4 F.Supp. 2d 616, 613 (E.D.La. 1998).  A prison or jail or its administrative departments are not legal entities capable of being sued under Section 1983 because they are not juridical entities under Louisiana state law capable of being sued and because they are not "persons" for purposes of suit under Section 1983.  Fair v. Crochet, 2010 WL 430806, *12 (E.D.La. 2010).  Also, Guidry v. Jefferson Cty. Detention Center, 868 F.Supp. 189, 191 (E.D.Tex. 1994).

that his jaw was (already) broken, and spent twelve days in the hospital, eight of them in ICU (Doc. 1; Doc. 76, pp. 44-55; Doc. 90, pp. 10-349).[2]  Therefore, Greenup alleges he was attacked by inmates four times, suffered severe injures each time, and the guards at the FPDC did not witness any of the attacks.

Greenup contends the prison staff at FPDC is aware of and encourages territorial battles in the FPDC, where inmates from outside of Winnsboro are attacked by inmates from Winnsboro (Doc.

---

[2] The following time line is derived from the pleadings and evidence (including the February 25, 2014 hearing) in this case. It is noted that defendants have never submitted incident reports, rule violation reports, and other such records from the FPDC, although they were ordered to do so (Doc. 5).

| | |
|---|---|
| May 20, 2010 | Greenup entered the Franklin Parish Detention Center ("FPDC") |
| June 21, 2010 | 1st inmate assault on Greenup (Doc. 59, p. 12/63; Doc. 105, pp. 19-44) |
| July 7, 2011 | 2nd inmate assault on Greenup (Doc. 59, p. 13/63; Doc. 105, pp. 45, 59-84) |
| Early February 2012 | 3rd inmate assault on Greenup (Doc. 59, p. 13/63; Doc. 105, pp. 85-99) |
| February 23, 2012 | 4th inmate assault on Greenup; Greenup hospitalized (8 days in ICU) (Doc. 59, p. 13/63; Doc. 105, p. 100-107, 114-123) |
| March 7, 2012 | Greenup released from the hospital and returned to the FPDC (Doc. 59, p. 14/63) |
| April 2, 2012 | Greenup was transferred to the Elayn Hunt Correctional Center ("EHCC") (Doc. 59, p. 14/63) |

1).   Greenup contends that Warden Lee was aware of the risk and refused to take measures to ensure Greenup's safety (Doc. 1).

Greenup contends that, as a result of the attacks, he continues to suffer migraines, blurry vision, nausea, dizziness, loss of balance, loss of taste and appetite, depression, nightmares, fear and anxiety.  For relief, Greenup asks for monetary damages, including punitive, injunctive relief, attorney fees, a transfer to the Elayn Hunt Correctional Center because it has more medical staff, and a trial by jury.

Defendants Lee, White, McMurray, and Guimbellot filed a motion for summary judgment on the issue of exhaustion (Docs. 18, 19, 27, 32, 39) which was denied (Doc. 72).  Defendants then answered the complaint and requested a jury trial (Docs. 28, 52, 60, 71).

Defendants White, McMurray and Guimbellot filed a motion for partial summary judgment (Doc. 96); Warden Lee is not included in the motion for summary judgment.  Greenup filed a brief in opposition to the motion (Doc. 100) and defendants filed reply (Doc. 101).  Defendants' motion for partial summary judgment is now before the court for disposition.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as
> to any material fact and the movant is entitled to

4

judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may: (1) give an opportunity to properly support or
> address the fact; (2) consider the fact undisputed for
> purposes of the motion; (3) grant summary judgment if the
> motion and supporting materials-including the facts
> considered undisputed-show that the movant is entitled to
> it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is

no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.    In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Inmate Safety

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994).  In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society.  Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the

prison official was "deliberately indifferent" to his health or safety.   Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk.  Farmer, 114 S.Ct. at 1978.  Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate.  It is insufficient to show solely that the official should have known of the risk.  The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.  Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety.  Farmer, 114 S.Ct. at 1981-82.  Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008).  However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.  Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison

officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. <u>Farmer</u>, 114 S.Ct. at 1984-1985.

<u>Guimbellot</u>

Greenup alleges in his complaint that, after the second time he was attacked on July 7, 2011, he was placed in a holding cell. Greenup contends that, after his cast was removed, Sgt. Guimbellot went to his cell and told him to pack his property because he was being moved back into the open dorm. Greenup alleges that he refused because he feared for his life if we went to an open dorm, but that Sgt. Guimbellot threatened Greenup with a taser, so Greenup complied (Doc. 1, Doc. 105, pp. 108/208, 182/208).

Defendants argue that Guimbellot was not employed at the FPDC in September 2011, when Greenup was moved from holding to a general dorm, and therefore Greenup's allegations against Guimbellot are meritless. Defendants show, through an affidavit by David Rigdon, the Chief Civil Deputy of the Franklin Parish Sheriff's Office, that Greenup was moved from the holding cell to "C-Cell 200" on September 23, 2011, where he resided until February 23, 2012 (Doc. 96, Ex. 2). Rigdon further states in his affidavit that defendant Guimbellot was not employed at the FPDC in September 2011 (Doc. 96, Ex. 2). Defendants also show, through an affidavit by Guimbellot,

8

that he was employed at the FPDC from January 9, 2010 until September 29, 2010, when he left to fulfill his military service and was deployed to Afghanistan; he returned to his previous position as a deputy at the FPDC on October 1, 2011 (Doc. 96, Ex. 3).

Defendants attached business records from the FPDC to both Guimbellot's and Rigdon's affidavits. Those records consist of one page of "inmate placement history" for Greenup (which does not show who made the entries or when they were made) and one page (dated February 23, 2012) from the daily "facility log" that is used to record employee assignments, which shows the entries were made by Shelby Graves. The "inmate placement history" purports to show that Greenup was moved from the holding cell to general population on September 23, 2011.). It is noted that the record provided is a short computer list of dates and the cells occupied by Greenup on those dates. There are no indications as to who made the computer entries or when they were made. The affidavit by Rigdon states that Greenup resided in C-Cell 200 from September 23, 2011 until February 23, 2012, when he sustained injuries in a fight with another prisoner (Doc. 96). However, the "Inmate Placement History" does not indicate that Greenup was moved on February 23, 2012; there is no entry for February 23, 2012 at all (Doc. 96,

Ex.).[3]   Therefore, the reliability of the "Inmate Placement History" appears questionable, and defendants' reliance on the September 23, 2011 entry on the "Inmate Placement History," to show Greenup was moved to general population on that date rather than in October 2011 as he claims (when Guimbellot was employed at the FPDC) is open to question.

In his June 2014 deposition, Greenup contends he could have been moved in September, July, August or November (Doc. 105, pp. 84-85).  At the February 25, 2014 hearing in this case, Greenup twice testified that he did not recall the exact time he was placed back in general population after his cast was removed, but it was around October 2011 (Doc. 59, Tr. pp. 12-13/63, 19/63).  Greenup testified in his deposition (Doc. 59, p. 19/63) and at his hearing that he was moved to general population by Guimbellot after his cast was removed (Doc. 105, pp. 108/208, 182/208) and Guimbellot states in his affidavit that he resumed working at the FPDC in October 2011.  Therefore, according to Greenup's testimony, it is possible that Guimbellot moved Greenup to general population in October 2011.[4]

------

[3] It is also noted that the "Inmate Placement History" for Greenup indicates he was released on April 2, 2012 (Doc. 96, Ex.); however, Greenup was not released, but was transferred to Hunt Correctional Center (Doc. 76, p. 76/206), and from there to David Wade Correctional Center on about April 4, 2012 (Doc. 76, pp. 164/206, 205/206).

[4] The point of defendants' argument that Guimbellot appears to be that he was not employed by the Sheriff in September 2011,

The LSUHSC-E.A. Conway medical records show that Greenup was still wearing the cast on August 18, 2011 (Doc. 76, p. 33-35/58), but a September 8, 2011 record from LSUHSC-E.A. Conway shows that Greenup removed his cast himself in September 2011 after it got wet (Doc. 76, p. 36/58 ).  The medical records from LSUHSCS-E.A. Conway further show that, in January 2012, Greenup was re-evaluated for a possible new fracture in the old fracture site (his right ulna), and it was noted that he had removed his previous cast on September 7, 2011 and did not want another one, so a splint was applied (Doc. 76, p. 42/58).[5]

Greenup did not allege the date he was moved from holding to the open dorm, but only alleges that he was moved by Guimbellot after his cast was removed.  Defendants attempted to establish the date Greenup was moved from holding to the open door as September 23, 2011 through an FPDC business record that is not clearly reliable (Doc. 105, Ex.).  There is an issue of material fact as to when Greenup was moved to the C-Dorm in Fall 2011 and who moved him.

Defendants also argue that Guimbellot was not present for any of the attacks on Greenup and that he was not aware that Greenup

---

but it is not clear how that help

[5] There are no medical records from Greenup from the Franklin Parish Detention Center in 2010 or 2011, though are records from outside medical care providers for 2010 and 2011 (Doc. 76).

feared to his safety or faced a substantial risk of harm by being place into the open dorm. However, Greenup contends he tried to refuse to be moved and told Guimbellot he did not want to return to the open dorm, which is why Guimbellot threatened him with a taser. There is a genuine issue of material fact as to whether Guimbellot was aware that Greenup did not want to return to the open dorm because he feared for his safety.

Therefore, there are genuine issues of material fact as to whether Greenup was moved to general population in September or October 2011, and whether Guimbellot ignored Greenup's statements that he feared for his safety, which preclude a summary judgment. Defendants' motion for summary judgment should be denied at to Guimbellot.

McMurray

Next, defendants show, through an affidavit by defendant Gerald McMurray, that he was working at FPDC on February 23, 2012, but was not assigned to or present in the control room which contains the cameras for the dormitory that housed Greenup on that date (Doc. 96, Ex. 4). McMurray contends in his affidavit that he was not present for and did not witness the fight between Greenup and other inmates on February 23, 2012, did not hear Greenup tell White that he was fearful for his safety, Greenup did not complain to McMurray that he had been assaulted in early February 2012, McMurray did not have knowledge of the attack, and McMurray did not

12

see Greenup with a black eye or a busted lip prior to the February 23, 2012 incident (Doc. 96, Ex.4). McMurrary further states in his affidavit that he did not know that Greenup feared for his safety or was a risk of harm prior to February 23, 2012, and was unaware of any "territorial battles" occurring in the FPDC (Doc. 96, Ex.4).

Greenup did not make any specific allegations involving McMurray in his complaint (Doc. 1). In order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that particular defendant's action or inaction was a violation of the plaintiff's civil rights. Reimer v. Smith, 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981). Also, Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 1098 n. 7 (1986). Greenup has not alleged or offered any proof of any act or omission by Greenup which constituted a violation of Greenup's civil rights.

Therefore, Greenup's action for damages against McMurray should be dismissed.

Sgt. White

Defendants argue that Greenup's complaint against White should be dismissed because Greenup did not allege that White was involved in any of the incidents, but only alleged that he told White he needed protection from other inmates and White refused to help him because Greenup would not identify his attackers.

Greenup contends in his complaint that, after the third time

13

he was attacked and his jaw was broken (in early February 2012),
Sgt. White saw Greenup's busted lip and black eye, asked him who
had done it, and Greenup responded that he could not tell him and
asked White to move him out of the dorm (Doc. 1; Doc. 105, p. 159-
160/208).  Greenup alleges that Sgt. White said he would not take
Greenup out of the open dorm unless he told White who had hurt him
(Doc. 1).  Greenup alleges that he told Sgt. White he did not know
who had jumped him, so Sgt. White sent Greenup back to the open
dorm (Doc. 1).  Greenup was subsequently attacked again on February
23, 2012 and sustained severe injuries.

Defendants submitted an affidavit by White (Doc. 96, Ex. 5),
in which White states that he does not recall seeing Greenup with
a busted lip and black eye in the chow hall in early February 2012,
he does not recall Greenup telling him that he had been involved in
an altercation with other inmates and was fearful for his safety,
he does not recall Greenup requesting a transfer to a different
dormitory, he would have attempted to investigate the event if he
had been informed of an inmate assault and request for transfer and
would have reported the alleged assault and request for a transfer
to the superior officer on duty, he believes he would recall if
Greenup had reported an inmate assault and request for transfer to
him, and he is unaware of any territorial battles occurring at FPDC
(Doc. 96, Ex. 5).

Defendants' argument that White is not liable because he was

14

not present when Greenup was attacked on February 23, 2012 is unavailing. Greenup contends that, in early February 2012, he told White he feared for his safety and wanted to be moved out of the open dorm, and that White saw Greenup's injuries, but White refused to do anything, and Greenup was attacked again on February 23, 2012. According to Greenup, White was aware of a substantial risk of future harm to Greenup, both from Greenup's statement to him and from the physical evidence that Greenup had already been assaulted, and was deliberately indifferent to that risk. White's presence at the February 23, 2012 assault is not a pre-requisite for his liability. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. <u>Farmer</u>, 114 S.Ct. at 1978.

Since there are genuine issues of material fact as to whether Greenup told White he had been assaulted and asked for a transfer to another dorm and whether White ignored the risk to Greenup's safety, defendants' motion for partial summary judgment should be denied as to White.

Conclusion

Based on the foregiong discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED as to McMurray and that Greenup's complaint against McMurray be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that defendants' motion for summary

judgment be DENIED as to Guimbellot and White.[6]

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before making a  final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 24th day of November 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

___

[6] Defendant Lee was not included in defendants' motion for summary judgment.

16