RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 5/27/15
       JT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LEVI GREENUP,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 3:13-CV-00392 |
| VERSUS | |
| CHAD LEE, et al.,<br>    Defendants | JUDGE ROBERT G. JAMES<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

It is recommended that the motion for summary judgment filed by defendant Warden Chad Lee be denied (Doc. 115).

Facts and Procedural History

Before the court is a civil rights complaint pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Levi Greenup ("Greenup") on February 21, 2013. The remaining defendants are Chad Lee (Warden of the Franklin Parish Detention Center ("FPDC") in Winnsboro, Louisiana), William Hunter Guimbellot ("Guimbellot") and Arlandus White ("White"), correctional officers employed at the Franklin Parish Detention Center.[1]

Greenup alleges in his complaint (Doc. 1) that, while he was confined in the FPDC in February 2012, he was attacked by several inmates and severely injured. Greenup contends he was previously attacked and injured by an inmate on June 21, 2010, and the guards did not see that incident occur; Greenup contends he suffered a

---

[1] In his complaint, Greenup incorrectly named Deputy Guimbellot as "Sergeant Gimelot" and Deputy White as "Sergeant White" (Doc. 18).

severe laceration to the back of his head which required five staples (Doc. 1; Doc. 76, pp. 12-17/58). Greenup further contends that, in a subsequent, second incident on July 7, 2011, he was attacked my multiple inmates, resulting in a fractured ulna; again, the guards did not see the attack (Doc. 1; Doc. 76, p. 24/58). After the second incident, but before February 23, 2012, Greenup contends he was attacked by inmates a third time and suffered a "busted" lip, a broken jaw, and a black eye (Doc. 1); there do not appear to be any medical or other records relating to this incident. In the fourth incident, on February 23, 2012, Greenup was attacked by multiple inmates and the guards again did not see the incident; Greenup suffered a fractured skull, brain trauma (bleeding and swelling), and severe memory loss, discovered that his jaw was (already) broken, and spent twelve days in the hospital, eight of them in ICU (Doc. 1; Doc. 76, pp. 44-55; Doc. 90, pp. 10-349).[2] Therefore, Greenup alleges he was attacked by

---

[2] The following time line is derived from the pleadings and evidence (including the February 25, 2014 hearing) in this case.

| | |
|---|---|
| May 20, 2010 | Greenup entered the Franklin Parish Detention Center ("FPDC") |
| June 21, 2010 | 1st inmate assault on Greenup (Doc. 59, p. 12/63; Doc. 105, pp. 19-44) |
| August 2010 | Greenup moved to the C Dorm (Doc. 96, Ex.) |
| November 2010 | Greenup moved to the A Dorm (Doc. 96, Ex.) |
| February 2011 | Greenup moved to the D Dorm (Doc. |

inmates four times and suffered severe injuries each time. In his complaint, Greenup contends defendants failed to protect him and asks for damages due to the February 23, 2012 attack.

Greenup contends the prison staff at FPDC is aware of and encourages territorial battles in the FPDC, where inmates from outside of Winnsboro are attacked by inmates from Winnsboro (Doc. 1). Greenup contends that, due to the previous attacks, Warden Lee was aware of the risk and refused to take measures to ensure Greenup's safety (Doc. 1). Greenup alleges that, as a result of the February 23, 2012 attack, he continues to suffer migraines,

---

| | |
|---|---|
| | 96, Ex.) |
| March 2011 | Greenup moved to the E Dorm (Doc. 96, Ex.) |
| July 7, 2011 | 2nd inmate assault on Greenup (Doc. 59, p. 13/63; Doc. 105, pp. 45, 59-84) |
| September 2011 | Greenup moved to the C Dorm (Doc. 96, Ex.) |
| Early February 2012 | 3rd inmate assault on Greenup (Doc. 59, p. 13/63; Doc. 105, pp. 85-99) |
| February 23, 2012 | 4th inmate assault on Greenup; Greenup hospitalized (8 days in ICU) (Doc. 59, p. 13/63; Doc. 105, p. 100-107, 114-123) |
| March 7, 2012 | Greenup released from the hospital and returned to the FPDC (Doc. 59, p. 14/63) |
| April 2, 2012 | Greenup was transferred to the Elayn Hunt Correctional Center ("EHCC") (Doc. 59, p. 14/63) |

blurry vision, nausea, dizziness, loss of balance, loss of taste and appetite, depression, nightmares, fear and anxiety. For relief, Greenup asks for monetary damages, including punitive, injunctive relief, attorney fees, a transfer to the Elayn Hunt Correctional Center, and a trial by jury. Greenup is presently confined in the David Wade Correctional Center in Homer, Louisiana.

Defendant Lee filed a motion for summary judgment (Doc.115), to which Greenup responded (Doc. 117). Lee's motion for summary judgment is now before the court for disposition.

### Law and Analysis

#### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes

of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

<u>Warden Lee</u>

Warden Lee contends he is entitled to a summary judgment in his favor because he is entitled to qualified immunity.

1.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. In assessing the defense, the court must first inquire whether the plaintiff has asserted the violation of a clearly established constitutional right. If that inquiry is answered in the affirmative, the court must then determine whether the defendants' conduct was objectively reasonable in light of the established law. <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Also, <u>Hassan v. Lubbock Independent School District</u>, 55 F.3d 1075, 1079 (5th Cir.), cert. den., 516 U.S. 995, 116 S.Ct. 532 (1995).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights, and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. <u>Hare v. City of Corinth</u>, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has

alleged violation of a clearly established constitutional right. This analysis is made under the currently applicable constitutional standards. The second prong of the qualified immunity test if better understood as two separate inquired: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. Hare, 135 F.3d at 325-36. Objective reasonableness is a question of law for the court. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Hare, 135 F.3d at 328.

2.

Greenup contends that Warden Lee was aware of and encouraged territorial battles in the FPDC, and that Warden Lee was aware of the risk of harm to Greenup and refused to take measures to ensure Greenup's safety (Doc. 1).

The Eighth Amendment imposes duties on prison officials to

provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. <u>Farmer</u>, 114 S.Ct. at 1976-77.

Therefore, Greenup has alleged the violation of a constitutional right that was clearly established in 2012.

3.

The next inquiry is whether Warden Lee's actions with regard to Greenup's safety were objectively reasonable in the light of the clearly established law.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. <u>Farmer</u>, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is

insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. Farmer, 114 S.Ct. at 1984-1985.

Lee admits in his affidavit that he was aware that Greenup had

sustained a cut to his head in a fight with another inmate in June 2010 and had been sent to the hospital for his injuries (Doc. 115, Ex.). Lee states in his affidavit that he met with Greenup soon afterward and discussed the situation with Greenup and Greenup's mother (by phone), Greenup identified the person with whom he had fought, and Greenup requested a transfer to a different facility (Doc. 59, pp. 28-30; Doc. 115, Ex.). Greenup's placement history shows that, at the time of the fight, he was housed in ASH (Doc. 96, Ex.). Warden Lee states that he denied Greenup's request for a transfer because the fight was an isolated incident resulting from a specific disagreement with another inmate and that any future risk to Greenup could be ameliorated by placing Greenup in a different dormitory, thereby separating Greenup from that inmate (Doc. 115, Ex.).

Greenup's placement history shows that, after Greenup recovered, he was moved to C Dorm in August 2010, to the A Dorm November 2010, to the D Dorm in February 2011, then to the E Dorm in March 2011 (Doc. 96, Ex.).

Warden Lee further states in his affidavit that, in July 2011, Greenup told guards he had fallen and injured his arm but later told them he had been involved in a fight with other inmates, Greenup's broken arm was treated, and he was placed in a holding cell until his cast was removed because a cast can be used as a weapon (Doc. 115, Ex.). Warden Lee states that he again met with

Greenup after that incident, Greenup identified his assailants, and offered to exchange information and asked for a transfer from the FPDC (Doc. 59, p. 38; Doc. 115, Ex.). Warden Lee states in his affidavit that he denied Greenup's request for a transfer because he intended to have Greenup separated from the inmates with whom he had the altercation (Doc. 115, Ex.). After Greenup's cast was removed, Warden Lee moved Greenup to C Dorm, away from the inmates with whom he had fought (Doc. 115, Ex.).

Greenup's placement history shows that Greenup was moved to the C Dorm in September 2011 (Doc. 96, Ex.).

Greenup contends in his brief that, after the June 2010 attack, he was placed in a holding cell for 66 days, then moved to the C Dorm for six months, then moved to the D Dorm for about 30 days, then moved to the E Dorm again (Doc. 117). GREENUP contends that, a little more than one year after the June 2010 attack, and about 128 days after being returned to general population (E Dorm), he was attacked again in July 2011 and his arm was fractured (Doc. 117).

Greenup contends that, after his broken arm mended, he was moved to C Dorm, directly across from E Dorm; GREENUP alleges that inmates in E Dorm could provoke inmates in C Dorm to attack him (Doc. 117). GREENUP contends he told Warden Lee, in a letter, that he was having problems with the inmates in C Dorm after an altercation in early February 2012, and that he would provide

11

information to Warden Lee (as a confidential informant) if he would move Greenup, but Warden Lee never responded (Doc. 117). Greenup was attacked on February 23, 2012.

Warden Lee states in his affidavit that he was unaware Greenup was in another fight in early 2012, in which his jaw was broken, and that he was also unaware that Greenup had problems with any of the inmates in C Dorm until he was attacked on February 23, 2012 (Doc. 115, Ex.). Warden Lee states in his affidavit, after that attack, he transferred Greenup out of the FPDC (Doc. 115, Ex.).

Greenup contends Warden Lee acted unreasonably in refusing to protect him by transferring him out of the FPDC after the previous assaults and injuries and, as a result, he was assaulted on February 23, 2012.

Warden Lee contends he acted reasonably to protect Greenup from other inmates by moving Greenup to the C Dorm in order to separate him from the inmates he was fighting with. The Fifth Circuit has held that separating inmates who have a history of fighting or assaults is objectively reasonable. See Moore v. Lightfoot, 286 Fed.Appx. 844, 849 (5th Cir.), cert. den., 555 U.S. 1054, 129 S.Ct. 641 (2008). Warden Lee argues that he had no advance knowledge that Greenup would be attacked by the inmate in the C Dorm in 2012. However, Greenup contends he informed Warden Lee, shortly before the February 23, 2012 attack, that he was having problems with the inmates in C Dorm, feared an attack, and

asked to be moved. Also, Greenup contends that Warden Lee was aware of the territorial battles that were encouraged at FPDC and that Greenup had been the victim of such battles, but Warden Lee did not address that allegation in his affidavit. Therefore, there is a genuine issue of material fact as to whether Warden Lee knew that Greenup was in danger of being attacked again in February 2012 and failed to take any steps to prevent or reduce the risk of harm to Greenup at that time.

Since there are genuine issues of material fact which preclude a summary judgment, as to whether Warden Lee acted reasonably to protect Greenup and whether he was aware that Greenup was likely to be assaulted again in February 2012, Warden Lee's motion for summary judgment should be denied.

## Conclusion

Based on the foregiong discussion, IT IS RECOMMENDED that Warden Lee's motion for summary judgment be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required

nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of May 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE